IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| CHARLES L. PHILLIPS,<br><br>                    Plaintiff,<br><br>       v.<br><br>PEARSON'S PAINTING, INC.,<br><br>                    Defendant. | **8:13CV211**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on the parties' cross-motions for summary judgment, Filing No. 44 and Filing No. 47, and defendant's motion for an extension of time to conduct additional discovery to refute plaintiff's motion, Filing No. 50.[1]  This is an action for damages for unpaid overtime compensation for work performed by the plaintiff as an employee of defendant Pearson's Painting, Inc. (hereinafter, "the Company"), under the Fair Labor Standards Act, 29 U.S.C. § 216 *et seq.*, and the a violation of the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.* Jurisdiction is premised on 28 U.S.C. § 1331 (federal question jurisdiction ) and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

## I.  BACKGROUND

In his first claim for relief, plaintiff alleges that he routinely worked overtime hours and was not compensated by the defendant, in violation of the FLSA.  Filing No. 1, Complaint at 2.  In his second claim for relief, plaintiff alleges that he was entitled to an agreed upon hourly wage for the hours he worked for defendant, but was not paid the

---

[1] In light of the court's disposition, the defendant's motion for an extension of time is moot.  Also, the defendant submitted and the court considered the defendant's response to the plaintiff's motion.

set hourly wage for all hours worked, in violation of the NWPCA.  Plaintiff's Complaint, .
Filing No. 1 at 3, ¶15.

The parties' respective statements of material fact show that they agree on the
following facts.  *See* Filing No. 45, Brief in Support of Plaintiff's Motion for Summary
Judgment at 2-9; Filing No. 56, Brief in Opposition to Plaintiff's Motion for Partial
Summary Judgment at 3-18; Filing No. 58, Plaintiff's Brief in Opposition at 2-6.
Pearson's Painting is a commercial painting contractor based in Blair, Nebraska.
Robert ("Bob") Pearson is the Company owner and President.  Pearson's Painting has
20 employees on average, and averages over $500,000 in sales annually.

Bob Pearson runs the business day-to-day with the help of his sons and his
superintendent, Craig Wessel.  Bob Pearson handles the human resources aspects of
the business, including scheduling and payroll.   From an operational standpoint,
Pearson's Painting has work crews at three to four work sites at a given time, and
contracts to perform about 25 paint jobs per year.

The plaintiff worked as a foreman throughout his employment and was
terminated in May of 2013.  His ending wage was $24 per hour.  Prior to Craig Wessel's
hiring, Phillips reported directly to Bob Pearson.  After Wessel was hired, Phillips
reported to Wessel.  In addition to his foreman responsibilities, Phillips ran errands and
hauled equipment for the Company.  The Company authorized him to buy supplies from
the Company's suppliers, including Sherwin-Williams.  The plaintiff purchased supplies
on an account at virtually every Sherwin-Williams store in the Omaha metropolitan area.

Phillips bought defendant's painting supplies on defendant's accounts and was
supposed to be paid for the time that he spent purchasing supplies for defendant.

Whenever Phillips charged something to the Sherwin-Williams account, Bob Pearson received an invoice in the mail. Mr. Pearson received invoices from Sherwin-Williams on a weekly basis and reviewed them personally.

With respect to defendant's scheduling and recordkeeping practices during Phillips's employment, Bob Pearson and Craig Wessel were responsible for scheduling employees. Pearson admits that they created no written schedules for employees. Bob Pearson admits that there were no written policies regarding employee break times. (Pearson Dep. 33:24-34:2). He claims that employees received a paid 15-minute break at 9:30 a.m., and an unpaid lunch break at 12:00 p.m. Bob Pearson claims that foremen were responsible for recording each crew member's work hours on handwritten time cards. There was no time clock.

The company's time cards only specified the number of hours worked per day, as opposed to start times and stop times. Wessel or Pearson would collect data on employees' work hours at the end of the week. They would either (1) pick up hand-written time cards from the job sites, or (2) ask employees to report their time over the phone. Wessel was responsible for turning in time information to Pearson. The defendant admittedly did not collect time cards for weeks that employees reported their work hours over the phone. When the defendant received time cards or self-reported hours over the phone, it would record the data into a Quickbooks spreadsheet and generate an electronic time card for payroll ("electronic time sheets"). The defendant's electronic time sheets are what the defendant relied on when cutting checks to plaintiff. The defendant claims that its electronic timesheets document any overtime that an employee would have worked during a workweek, and that its electronic records were

3

about 99 percent accurate.  The defendant also does not dispute that the plaintiff was employed to buy paint from Sherwin-Williams, and that the plaintiff was "on the clock" whenever he bought such supplies for the defendant.  The defendant admits that after purchasing supplies from Sherwin-Williams, the plaintiff would have had to transport the supplies to one of the Company's work sites, and was on the clock while he transported the supplies.

The parties disagree, however, on several points.  *See*, e.g., Filing No. 58, Plaintiff's Brief in Opposition at 2-5 (generally disputing the veracity of statements by Robert Pearson in his deposition); Filing No. 63, Defendant's Brief in Reply to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 2-4 (generally disputing inferences to be drawn from the plaintiff's evidence).  The defendant disagrees as to the accuracy and importance of the timesheets, the adequacy of the defendant's records, and whether the Sherwin-Williams invoices reflect purchases on behalf of the Company or personal purchases.  Further, they disagree on whether the plaintiff documented all his overtime hours or claimed, complained or inquired about overtime or being under-compensated.  Each party disputes the veracity of the other party's testimony.

The parties have submitted documents and affidavits in support of and opposition to the respective motions.  The defendant submits the affidavit of field superintendent Craig Wessell, who states that the plaintiff's hours are largely self-reported and that the plaintiff had submitted timesheets that did not reflect that he left early on certain days. Filing No. 49, Index of Evid., Ex. 2, Affidavit of Craig Wessell ("Wessell Aff.") at 2-4. Wessell also states the plaintiff was terminated on May 6, 2013, in part for falsifying

hours.  *Id.* at 3.  The defendant also submits the affidavits of Robert Pearson and of a Sherwin-Williams employee, explaining the Company's policies and hours and the paint store's practices and invoices in general.  Filing No. 57, Ex. 1, Affidavit of Robert Pearson; Ex. 2, Affidavit of Trevor Tegels.  The plaintiff submits his own affidavits, various invoices, handwritten timesheets, electronic payroll timesheets, holiday timesheets, an email obtained in discovery, and authenticating affidavits.  *See* Filing No. 46, Index of Evid., Exs. 1-7.  In his first affidavit, the plaintiff states that "[f]rom 2009 through 2013, [he] worked a lot of overtime hours for the Company and was not compensated for any of [his] time. Specifically, [he] worked many hours prior to 7:00 a.m. and after 3:30 p.m., as well as many hours on Saturdays and Sundays."  *Id.*, Ex. 7, Phillips Aff. at 1.  The plaintiff also submitted evidence and affidavits in response to the defendant's submissions.  Filing No. 59, Index of Evid., Exs. 1-13.  In his second affidavit, plaintiff states that he was authorized to, and did, purchase paint for the defendant at Sherwin Williams.  *Id.*, Ex. 8, Phillips Aff. II at 1.  He further states that the timesheets produced by the defendant in discovery do not reflect all the hours he worked.  *Id.* at 2.  Further, he states he believes he was terminated because he complained that he injured his back on the job, but was told by defendant Pearson that he was terminated because of a shortage of work.  *Id.* at 2.

The plaintiff argues that the time records produced by defendant are not an accurate accounting of the hours plaintiff worked for defendant.  He argues that although the defendant claims that he only worked from 7:00 a.m. to 3:30 p.m. with an unpaid 30-minute break at noon, numerous invoices show that the plaintiff purchased supplies on defendant's behalf at times outside of these reported hours.  He argues

those receipts demonstrate he was "on the clock" during the weekends.  The defendant, on the other hand, argues that the plaintiff was purchasing supplies for his personal use and not on behalf of the Company on many of those occasions.

## II.  LAW

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Serv., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011).  The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325.  Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983) (citations omitted).  Summary judgment is inappropriate when the record permits reasonable minds to draw conflicting inferences about a

material fact.  *Ozark Interiors, Inc. v. Local 978 Carpenters*, 957 F.2d 566, 569 (8th Cir. 1992).  Ambiguities and conflicts in a deponent's testimony are generally matters for the jury to sort out.  *Id.*

"The FLSA prohibits the employment of any person 'for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'"  *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 874 (8th Cir. 2012) (quoting 29 U.S.C. § 207(a)(1)).  "An employee who sues for unpaid overtime 'has the burden of proving that he performed work for which he was not properly compensated.'"  *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), other parts superseded by statute); *Fast v. Applebee's International, Inc.*, 638 F.3d 872, 881 (8th Cir. 2011).  "When an employer maintains accurate time records . . . employees can satisfy their evidentiary burden by securing those accurate records."  *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir. 2013).  If an employer fails to keep accurate records, the employee gets the benefit of a relaxed evidentiary standard.  *Id.* (stating that under the "relaxed evidentiary standard, once the employee has shown work performed for which the employee was not compensated, and 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,' the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference") (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

The Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 to 48-1232 ("NWPCA"), provides the employee with a remedy to collect any compensation

the employer owes. *Malone v. American Bus. Info.*, 634 N.W. 2d 788, 792 (Neb. 2001). It obligates an employer to "pay all wages due its employees on regular days designated by the employer or agreed upon by the employer and employee." Neb. Rev. Stat. § 48-1230; *see Malone*, 634 N.W.2d at 792. The Act "places certain restrictions upon the employer's right to deduct, withhold, or divert a portion of an employee's wages, and specifies when unpaid wages are due following an employee's separation from the payroll." *Malone,* 634 N.W.2d at 792. The Act also permits an employee to bring suit on a claim for wages which are not paid in a timely fashion and, if successful in prosecuting such a claim, to recover attorney fees. *Id.*; Neb. Rev. Stat. § 48-1231.

The statute defines the term "wages" very broadly as follows:  "Wages means compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." Neb. Rev. Stat. § 48-1229(4). Although Nebraska courts require a plaintiff to show the disputed wages were previously agreed to by a defendant, the statutory words "previously agreed to and conditions stipulated have been met" require only that the employer has "agree[d] to pay plaintiffs at the appropriate rate of pay for the duties they were performing." *Hawkins v. City of Omaha*, 627 N.W.2d 118, 130 (2001).

The appropriate rate of pay is determined with reference to the minimum wage and overtime requirements of the FLSA since the statute requires employers to pay a minimum hourly wage and overtime that parallels the minimum wages set forth in the FLSA. *Compare* Neb. Rev. Stat. § 48-1203(1)(a)-(d) *with* 29 U.S.C. § 206(a)(1)(A)-(C). The terms of the FLSA allow states and municipalities to enact wage and hour

legislation that is more favorable than what is provided for in the FLSA. *See* 29 U.S.C. § 218(a); *Williams v. W.M.A. Transit Co.*, 472 F.2d 1258, 1261 (D.C. Cir. 1972) (stating that the FLSA expressly contemplates that workers covered by state law as well as FLSA shall have any additional benefits provided by the state law—higher minimum wages or lower maximum workweek). Section 218(a) "demonstrates Congress' intent to allow state wage laws to co-exist with the FLSA by permitting explicitly, for example, states to mandate greater overtime benefits than the FLSA." *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 248 (2d Cir. 2011) (noting that legislative history provides no support for precluding joint prosecution of FLSA and state law wage claims in the same federal action); *see also Knepper v. Rite Aid Corp.*, 675 F.3d 249, 262 (3d Cir. 2012) (noting that Congress explicitly contemplated dual enforcement of the FLSA).

## III.   DISCUSSION

The court finds that neither party has shown it is entitled to judgment as a matter of law. Resolution of the issues will require assessments of credibility. The court has reviewed the evidence submitted by the parties and finds there are issues of fact which will require assessments of credibility.

Moreover, the court cannot assess the importance of the documentary submissions such as invoices and timesheets, without corresponding testimony to provide context for and explanation of the documents. A reasonable fact-finder could draw conflicting inferences from the materials, depending on whose testimony were credited. The affidavits submitted in support of and against the motions show genuine issues of fact on most material issues. Essentially, the case involves dueling affidavits:

the plaintiff states he routinely worked over 40 hours per week and the defendant contends he did not. On this record, the court finds a rational jury could credit the testimony of the plaintiff's evidence or the defendant's and could return a verdict for either party. There is a genuine issue of material fact with respect to the adequacy of the defendant's recordkeeping and conflicting inferences can be drawn from the evidence.

Accordingly, the court finds the motions for summary judgment should be denied.

THEREFORE, IT IS ORDERED that:

1. The plaintiff's motion for summary judgment (Filing No. 44) is denied.

2. The defendant's motion for summary judgment (Filing No. 47) is denied.

3. The defendant's motion for an extension of response time (Filing No. 50) is denied as moot.

4. The parties shall contact the chambers of Magistrate Judge Thomas Thalken within ten (10) days of the date of this order to schedule a conference addressing further progression of this case.

DATED this 8th day of September, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge