IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CHARLES L. PHILLIPS,<br><br>    Plaintiff,<br><br>vs.<br><br>PEARSON'S PAINTING, INC., a Nebraska Corporation;<br><br>    Defendant. | 8:13CV211<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court following a nonjury trial. Plaintiff claims defendant failed to pay him overtime in violation of Fair Labor Standards Act, 29 U.S.C. § 201 et. seq ("FLSA") and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq. ("NWPCA"). Defendant disputes plaintiff's claims and alleges plaintiff received all the wages due and owing to him. The Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52.

**FINDINGS OF FACT**

At all times relevant, defendant Pearson's Painting, Inc. existed as a Nebraska corporation with a principal place of business in Blair, Washington County, Nebraska. The Company contracts to perform commercial and residential painting in Nebraska and Iowa. It averages 20 employees at a given time, and it has more than $500,000 in annual sales. Defendant concedes that it is subject to the wage-payment requirements of the FLSA and NWPCA. Bob Pearson is the sole owner, director and president of the Company. He is responsible for the company's day-to-day operations, employee scheduling and payroll. Plaintiff is a former employee of defendant. Plaintiff's

employment with defendant ended on May 6, 2013. During his employment with defendant, plaintiff was an hourly employee.

Defendant employed plaintiff as a painter and a foreman for approximately 8 years prior to the filing of this lawsuit.[1] Mr. Pearson and Mr. Phillips had known each other for thirty years. Plaintiff started working at $18.00 per hour, and by the end of his career with the defendant, he made $24.00 per hour. He worked multiple job sites at any given time. He worked on federal contracts, worked on the Midtown job, as well as numerous other jobs. During plaintiff's employment, he worked at several federally-funded jobsites that were subject to the Davis-Bacon Act of 1931. As a foreman, plaintiff reported directly to Bob Pearson and Superintendent Craig Wessel.

Plaintiff testified that he used his own truck and sometimes received gas money reimbursement. The defendant paid for his hotels and expenses via a company credit card. He often bought supplies for the jobs, using a Sherman Williams account in the defendant's name. He testified that there was no punch clock for hours worked, but they used a note pad and could use as many time cards as necessary. The cards were turned in on Monday morning, and defendant paid his employees on Tuesdays by paper check. Plaintiff testified that he typically started work at 7:00 a.m. and ended at 3:30 p.m. He further testified he started 15 minutes early to set up the site and stayed 15 minutes late. He indicated that Bob Pearson told him to do this and to not put it on his time card. He also received a ½ hour unpaid lunch break. The time card listed the date, job, and name of the employees, hours worked and then sometimes plaintiff would

---

[1] However, defendant laid plaintiff off in 2012 for two or three weeks due to a disagreement with the owner.

write his extra time on the back of the card.  *See* Ex. 101.  He did not keep a copy of the time cards. He testified that he only received about 5% of these time cards in discovery, and claims 90% are missing.  He contends that he was not paid for:  picking up supplies for the company before the regular shift commenced at 7 a.m.; arriving early to the job site to take attendance for crew members as they arrived at the job site; working after the regular shift ended at 3:30 p.m.; working full shifts on Saturdays and Sundays; and generally any hours in excess of 40 hours per week.

Plaintiff argues he did work Saturdays and Sundays in addition to the regular week.  *See e.g.*, Exs. 201 at 41, 43, 46, 59 and 66.  Many of the handwritten time cards are contained in Ex. 201.  Defendant contends that with regard to Ex. 201 at 19, plaintiff reported no overtime.

Plaintiff and defendant were close friends, and they worked certain jobs on their off hours.  For these jobs plaintiff received cash, generally 50% of the money they received for Saturday or Sunday jobs.  He testified that he did not get overtime for these hours.  He generally received overtime hours only if he worked 3-5 hours of overtime during the week.  If he did get paid, plaintiff contends it was in the form of an expense check that equaled straight time money.  He never received a 1099 for any of this after hours work.

Plaintiff kept some of his pay stubs.  *See e.g,* Ex. 119.  The payroll transaction detail is submitted as Ex. 107.  Plaintiff further contends that he was given extra money for "repairs", and he did not make these "repairs."  *See e.g.,* Ex. 118 at 5, 14 (truck repairs); (ladder expenses for $420.00).

3

Plaintiff relies in large measure on the Sherwin Williams invoices and Boyd Jones records, in support of his argument that he worked overtime for the defendant. In this regard plaintiff contends that the invoices at these two businesses show sales, and therefore, he must have been working on those dates. Plaintiff contends there are 97 instances where defendant should pay him overtime.

The Department of Labor conducted an audit of defendant's business in 2012, pursuant to a complaint by the plaintiff. After completing the audit, the Department of Labor found only $1,100.00 in money due to all employees. The Department of Labor audited each employee and the subcontractors.

Bob Pearson testified and stated he pays his employees weekly. He generally has about 20 employees, and sometimes up to 30. He typically has three jobs going on simultaneously, and the workweek starts on Sunday and ends Saturday. Time is either turned into him on cards, or the hours are called into him. There are no written policies in this regard. He testified that the plaintiff rarely worked on Saturdays or Sundays and did not work for the company on Saturday or Sunday. Bob Pearson generally prepares a written summary of the payroll. Jason Pearson, Bob Pearson's son, then uses the payroll summary to complete the digital time cards, as set forth in Ex. 102. The digital time records reflect the total time worked per week, not per day. Often the paper cards were destroyed after the time was called in by phone. Further, Bob Pearson denies that he ever told plaintiff to show up 15 minutes early or stay 15 minutes late. He testified that plaintiff was very jealous of defendant's son coming to work. Mr. Pearson terminated plaintiff in May, 2013. He heard that plaintiff was smoking in the parking lot, was stealing equipment from other contractors, and had a 12 foot Hiller Electric ladder

4

on top of his truck.  Mr. Pearson testified that plaintiff was leaving early but reporting full time work.

Mr. Pearson testified that plaintiff did work some overtime.  *See* Ex. 205, at 1-4, 10, 30, 38, 41, 57, 68; Ex. 202, p 88; Ex. 201, p. 50.  Exhibits 217, 218 and 219 show only 6 hours in overtime.  The backs of the cards for Ex. 201 pp. 26, 27, 30, 41, 46, were not produced.  Plaintiff contends, though, that the timekeeping practices contrast with the payroll records.  *See* Ex. 107; handwritten timesheets submitted to the company by Charles "Chuck" Phillips, Ex. 101; handwritten summaries prepared by Bob Pearson, Ex. 101; the company's internal computerized timesheets for Phillips, Ex. 102; timesheets submitted to the Department of Labor by the company, Ex. 120-123; sales invoices from the Sherwin-Williams Company regarding purchases made by "Chuck" on the company's account, Ex. 103; and daily jobsite reports generated by general contractors Boyd Jones Construction and the Weitz Company, regarding work performed by Pearson's Painting work crews on Saturdays and Sundays, Ex. 104-105.

Brian Mahlendorf, a general contractor for Weitz Co. testified that defendant is a painting subcontractor for him.  He used the defendant in his Midtown project from 2009-2013.  He stated that he kept logs on the site and number of employees, although he did not track them by name.  He testified that generally Pearson's crews did not work overtime hours.  Robert Volz, the ex-vice president for Boyd Jones Construction, also testified that Pearson is a subcontractor for their project.  *See* Ex. 104.

Jerry Elder testified that he worked for Pearson painting for 7 years as a foreman.  Elder testified about the time keeping practices.  He indicated that the employees used time sheets.  *See* Ex. 201.  He further testified that he sometimes

gives a verbal report and calls it into the defendant on Mondays. If he calls it in, he then destroys the card. He testified that he does not get overtime pay except maybe once a year, and if he works Saturdays or Sundays, he takes straight time compensation time off during the week. The crew can work without him being there, and deliveries from Sherman Williams are made and signed for by others in his absence. Mr. Elder also testified that defendant told him not to work over 40 hours per week. As far as he knows plaintiff never complained that he was underpaid or shorted pay. After the termination, plaintiff told Mr. Elder that he wanted to return to work. On cross examination, Mr. Elder testified that he was a convicted felon who was released in March, 2007 (methamphetamine and gun charges). He also indicated that he never worked specifically with the plaintiff.

Trevor Tegels worked for Sherwin Williams for the last 9 years as an assistant manager. He testified that he saw plaintiff buying paint for Pearson's over 150 times, and the majority of the invoices were created the same day the item was either picked up or delivered.

Gregory Franzen testified that he worked as a sales representative for Sherwin Williams for approximately 4 years and also served as the store manager there. He stated that time signature on the invoices typically record the time a product is picked up. He further stated that plaintiff could be at the store in the late afternoon and that plaintiff was at the store over a hundred times.

Jason Pearson testified that he does the clerical work, runs jobs as a superintendent, and works on the Quick Books forms for payroll. He indicated he did not work on the time cards, as his dad did that task. He only sees and receives the

hand written sheet created by his father, Bob Pearson. See Ex. 202. He knows only the number of hours for the week. He worked on some re-imbursement checks for work trucks and out of town jobs. His dad handled all of the Davis Bacon checks. Ex. 206, at 44.

Defendant argues that at most it had a 2.4% - 6.5% inaccuracy rate. He points out that Ex. 217 shows that there is no information on the back of the record about any claim of overtime, yet these are the weeks that plaintiff is asking for money. See Ex. 201.

The Court notes that between July 2009 and May 2011, plaintiff's weekly check was usually $840 before withholdings, or the product of $21 multiplied by 40. Plaintiff's weekly paycheck between May 2011 and June 2012 was usually $880, or the product of $22 multiplied by 40. Finally, plaintiff's weekly paycheck between June 2012 and May 2013 was usually $960, or the product of $24 multiplied by 40. Additionally, plaintiff points to 295 hours where he received untaxed checks, and the amounts paid are divisible by his straight time pay. See Ex. 118, pp. 64-73. Plaintiff contends that the reimbursement checks are all disguised as business expenses. Further, these checks had no description on the original checks, but they now have descriptions as reimbursements on defendant's copies of the checks. These facts, argue plaintiffs, are prima facie evidence of an overtime violation under FLSA.

**CONCLUSIONS OF LAW**

At all times relevant, Defendant was an "employer" for the purposes of the Fair Labor Standards Act and the Nebraska Wage Payment and Collection Act. At all times relevant, Plaintiff was an "employee" for the purposes of the Nebraska Wage Payment

and Collection Act, and a "non-exempt employee" for the purposes of the Fair Labor Standards Act.  The Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 et seq., creates a private cause of action for employees to collect "wages," as defined in that Act.

"[F]ederal courts have held that the FLSA is the exclusive remedy for the enforcement of rights created under the FLSA."  Freeman v. Central States Health and Life Company of Omaha, 2 Neb.App. 803, 808, 515 N.W.2d 131, 135 (1994) (citing Tombrello v. USX Corp., 763 F.Supp. 541 (N.D.Ala. 1991) and Lerwill v. Inflight Motion Pictures, Inc., 343 F.Supp. 1027 (N.D.Cal. 1972)).  "Put another way, a party can file an FLSA claim in a Nebraska state court …, but a party cannot use the Nebraska Wage Act to enforce rights that it may possess under the FLSA."  Id.  "As a matter of law, plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to the FLSA claim."  Tombrello v. USX Corp., 763 F.Supp. 541, 545 (N.D.Ala. 1991).

Defendant is required to keep adequate time records as required under the FSLA.  See 29 U.S.C. § 211(c); 29 C.F.R. § 825.500.  "Covered employers who have eligible employees must maintain records that must disclose the following: (1) Basic payroll and identifying employee data, including name, address, and occupation; rate or basis of pay and terms of compensation; daily and weekly hours worked per pay period; additions to or deductions from wages; and total compensation paid."  29 C.F.R. § 825.500(c).  The FLSA requires an employer to keep timesheets for the last three years and the NWPCA requires the records be kept the last four years.

The FLSA requires employers who are "engaged in the production of goods for commerce" to pay overtime compensation to employees who work more than forty hours in a week, unless the employee qualifies for exempt status under one of the narrowly construed exemptions. 29 U.S.C § 207(a), 213 (a)(1). Plaintiff was an hourly employee who was covered by the FLSA's overtime provisions, 29 U.S.C. § 207(a). "The FLSA prohibits the employment of any person 'for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'" *Lopez v. Tyson Foods, Inc.,* 690 F.3d 869, 874 (8th Cir. 2012) (quoting 29 U.S.C. § 207(a)(1)).

"An employee who sues for unpaid overtime 'has the burden of proving that he performed work for which he was not properly compensated.'" *Id.* (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946), other parts superseded by statute); *Fast v. Applebee's International, Inc.,* 638 F.3d 872, 881 (8th Cir. 2011). "When an employer maintains accurate time records … employees can satisfy their evidentiary burden by securing those accurate records." *Carmody v. Kansas City Board of Police Commissioners,* 713 F.3d 401, 406 (8th Cir. 2013) (citing *Anderson,* 328 U.S. at 687).

If the employer's recordkeeping is found to be inadequate or inaccurate, the employee is permitted to use a relaxed evidentiary standard. "Under this relaxed evidentiary standard, once the employee has shown work performed for which the employee was not compensated, and 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,' the burden then shifts

9

to the employer to produce evidence to dispute the reasonableness of the inference." *Id.* at 406 (quoting *Anderson,* 328 U.S. at 687-88). The relaxed evidentiary standard as discussed in *Anderson* applies only when the existence of damages is certain. *Id.*

However, if the employee fails to comply with the employer's timekeeping system and fails to notify the employer of the overtime he worked, then there is no FSLA violation. *Brown v. ScriptPro, LLC,* 700 F.3d 1222, 1230-31 (10th Cir. 2012); *Harvill v. Westward Communications, LLC,* 433 F.3d 428, 441 (5th Cir. 2005); *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981) (affirming summary judgment for employer when employee failed to report overtime on timesheets).

Generally, after establishing the applicability of the FLSA's overtime provisions, a plaintiff must establish by a preponderance of the evidence the number of hours worked and the amount of damages due. *Gomez v. Tyson Foods, Inc.,* 976 F.Supp.2d 1169, 1180 (D. Neb. 2013) (citing *Johnson v. Dierks Lumber & Coal Co.,* 130 F.2d 115, 118 (8th Cir. 1942)). However, "[w]here an employer has not kept adequate records of wages and hours, its employees cannot be penalized by being denied a recovery of back wages on the ground that the precise extent of their uncompensated work cannot be proved." *Gomez,* 976 F.Supp.2d at 1180-81 (citing *Dole v. Tony and Susan Alamo Found,* 915 F.2d 349, 351 (8th Cir. 1990). Thereafter, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence." *Id.* (citing *Anderson v. Mount Clemens Pottery Co.,* 328 U.S. 680, 687-88, 66 S.Ct. 1187 (1946). If the employer fails to bring forth such evidence, the Court may award damages to the employee for the approximate amount. *Donovan*

10

*v. Tony and Susan Alamo Found.,* 722 F.2d 397, 404 (8th Cir.1983). The employee need only present (1) evidence of work performed for which there was improper compensation, and (2) a reasonable inference of the amount and extent of the work. *Mt. Clemens,* 328 U.S. at 687-88. An employer who fails to keep adequate records in accordance with the FLSA cannot complain that the resulting calculation of the number of hours worked or back pay owed is too uncertain or approximate. *Id.*

Under the NWPCA, an employee may sue an employer for wages that are not paid within 30 days of the regular payday. Neb. Rev. Stat. § 48-1231. Wages are "compensation for labor or services rendered by an employee, including fringe benefits, when previously agreed to and conditions stipulated have been met by the employee, whether the amount is determined on a time, task, fee, commission, or other basis." Neb. Rev. Stat. § 48-1229(4). A payment is considered a wage subject to the NWPCA if "(1) it is compensation for labor or services, (2) it was previously agreed to, and (3) all the conditions stipulated have been met." *Pick v. Norfolk Anesthesia, P.C.,* 276 Neb. 511, 755 N.W.2d 382. 386-87 (2008).

The FLSA has a two year statute of limitations for non-willful violations and a three year statute of limitations for a willful violation. 29 U.S.C. § 255(a). The statute of limitations for a NWPCA claim falls under the four-year catchall statute of limitations set forth in Neb. Rev. Stat. § 25-206. ("action upon a liability created by statute … can only be brought within four years"); *See also* Neb. Rev. Stat. § 25-212 ("An action for relief not otherwise provided for in Chapter 25 can only be brought within four years after the cause of action accrued").

**ANALYSIS**

### A. Findings

The Court must first determine the evidentiary standard in this case. The Court could determine that plaintiff is not entitled to the relaxed evidentiary standard, as the apparent error rate in this case is low. Under the law, a low error rate does not entitle the plaintiff to a relaxed evidentiary standard. *Anderson,* 328 U.S. at 680. However, because there are some instances of errors and omissions, the Court could likewise find the use of the relaxed evidentiary standard is appropriate. Under the relaxed evidentiary standard, the plaintiff must still prove he did the work and was not compensated by the defendant. Plaintiff must show reasonably related damages. The burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference that this evidence is incorrect. In any event, such a conclusive decision by this Court as to the evidentiary standard is not necessary, because the court comes to the same conclusions under either standard.

Next, the Court must determine if this is a willful violation. If yes, the three year statute of limitations applies. If no, the two year statute of limitations applies. The Court finds the violation in this case is willful. Pearson concedes that he knew he was required to pay overtime whenever an employee worked over 40 hours per week. The Court finds that there are the three sets of relevant payroll documents: plaintiff's time cards, Bob Pearson's handwritten summaries, and the computer pages. The Court finds the time records as a whole are adequate for the hours reflected therein. However, some of the documents are inconsistent and some are missing. Not all of the job sites appear to be documented, not all of the hours appear to be documented adequately, and there are inconsistencies. *See e.g.,* Ex. 106, at C-40, 85, 86, 113 and

114. Many of the "repairs" to plaintiff's vehicle and other expenses were in fact payment for overtime work. These expenses are generally divisible by plaintiff's straight time wages during the time period in question. *See e.g.,* Ex. 118, at pp. 75-76.

The defendant provided painting services to business and residential customers. However, the defendant corporation primarily served business clients on construction job sites. The defendant testified that he personally contracted for small residential jobs. For these smaller jobs he had an arrangement to pay the plaintiff a flat fee for each job, usually half of the net contract price. Pearson bid these smaller jobs through the defendant corporation but testified he could not afford to charge the corporate wage rate for these smaller jobs. His corporate business attracted these smaller jobs, he used the corporation's equipment to perform the work, and his corporate employees did the work off the corporate payroll. Pearson apparently understood that the employee was working overtime because by paying the employee as an independent contractor he was paying the equivalent of overtime wages. There were no payroll deductions for income tax withholding, FICA tax, or Medicare tax. As long as the employee did not declare the wages as income the employee was getting "overtime" pay. The fact that the pay was disguised as an employee expense facilitated this practice. This explains the truck payment, vehicle repair and other expense items that are generally evenly divisible was the plaintiff's hourly wage. This practice also allowed Pearson to offset the hidden wage expenses against corporate income. Clearly the work performed by his corporate employees on these small jobs was for the benefit of the corporation and independent contractor work by Phillips or any other employee working for the defendant.

The "independent contractor" arrangement between the parties could have been accomplished without running afoul of Fair Labor Standards Act, if the defendant had a separate business entity that performed these smaller jobs. However, there is no evidence of such. Accordingly, the court finds that most of the expense checks payable to the plaintiff actually represent straight time payment for overtime work. The Plaintiff is, therefore, entitled to recover the unpaid balance of time and half for those hours. Accordingly, the Court finds defendant must compensate plaintiff for these hours as set forth hereinafter.

The plaintiff further alleges that he is entitled to payment for fifteen minutes prior to the start and fifteen minutes at the end of each workday for required work setting up, cleaning up and other administrative duties. The plaintiff argues that the Sherwin Williams invoices (Ex. 103) and the Boyd Jones records (Ex. 104) support his argument that he worked overtime for the defendant, but the Court finds this evidence is very limited and anecdotal. The plaintiff has not met his burden of showing sufficient evidence under either standard of the plaintiff's hours worked and a relationship to these invoices. Further, plaintiff agreed in his courtroom testimony that Sherwin Williams made some deliveries when plaintiff was not present. Pham Christopher, store manager for Sherwin Williams, testified that he could not tell from the invoices whether the plaintiff was inside the store for any given purchase order. Sometimes the products were shipped and other times they were delivered. He further testified that they never did Saturday or Sunday deliveries. Accordingly, the Court will deny plaintiff's claims as they relate to Sherwin Williams and Boyd Jones invoices.

The court notes that the plaintiff prepared and submitted the records for his work time. As crew foreman the plaintiff also was free to come and go from various job sites as he felt necessary. Appropriate documentation of this alleged additional work time is lacking.

The Court also finds that for a period of 10 years, there is no evidence, other than on one occasion, where plaintiff ever demanded additional payment or complained that he was shorted pay. Plaintiff testified that he believed both he and Pearson would work together until retirement, and then he would get a percentage of the business. No written or corroborating evidence was offered in this regard.

The Court concludes that Pearson failed to pay plaintiff for some overtime hours at overtime rates, instead claiming the additional hours paid were for reimbursement. The Court finds, as set forth below, that plaintiff is entitled to all "reimbursements" which more likely than not were partial overtime payments for overtime worked by the plaintiff. The Court further determines that plaintiff is entitled to overtime pay for hours in excess of 40 hours where the defendant instead paid him straight time. These damages are set forth below.

### B.  Damages Due and Owing

The Court finds the defendant owes the plaintiff the following sums of money for both lack of overtime pay and for "untaxed" checks: $94.50 for the week of July 26, 2010, where he received an untaxed check at his regular rate; $63 for the week of August 9, 2010; the week of September 13, 2010 for $84; the week of September 20 for $63; Week of November 1, 2010 - $183.75; Week of November 15, 2010 - $84; Week of December 6, 2010 - $99.75; Week of January 24, 2011 - $99.75; Week of May 2, 2011 -

$147; June 25, 2011 - $264; August 22, 2011, $33; Week of October 17, 2011 - $55. The week of September 3, 2012 - $18; Week of September 24, 2012 - $120; Week of October 8, 2012 - $72; Week of October 15, 2012 - $84; Week of January 28, 2013 - $120; Week of February 4, 2013 - $120; Week of March 4, 2013 - $90; and Week of April 15, 2013 - $84.[2]

Accordingly, the Court finds the sum of the hours owed to plaintiff is $1,978.75. *See* Ex. 118.

### D. Liquidated Damages

A cause of action for willful violation permits a claim for liquidated damages in addition to overtime pay for the last three years of employment. *See* 29 U.S.C. § 255(a) ("a cause of action arising out of a willful violation may be commenced within three years"); 29 U.S.C. § 260.

The Court will not award liquidated damages in this case. Although the Court notes that a company cannot claim good faith when it pays wages "off the books", the amount in this case is minimal. It is clear that defendant paid some overtime hours. Infra, at p. 5. The missed hours as set forth herein above, constitute a small percentage of plaintiff's wages. Further, plaintiff only complained about not receiving overtime wages to defendant once during his tenure at Pearson Painting. Thereafter, defendant compensated him for those particular overtime wages. Notably both the plaintiff and the

---

[2] The Court will not permit damages on the Sherwin Williams invoices, including the dates on August 8, 2009; July 10, 2010; July 17, 2010; Week of October 4, 2010; Week of October 11; 2010; October 23, 2010; December 18 and 19, 2010; May 14, 2011; Week of May 23, 2011; June 10, 11, and 12, 2011; June 25, 2011; and Week of September 17, 2012. Neither will the court allow damages for the Boyd Jones daily work logs for the Week of September 10, 2012; Week of September 17, 2012; and Week of October 1, 2012.The Court has already concluded that these dates are somewhat meaningless, as there are no times or names on these invoices.

defendant agreed to this off the books arrangement. The plaintiff may have believed that this arrangement would work to his benefit in the event he became a manager or obtained an equity interest in the business. Also, it is significant that the plaintiff decided to assert this claim for overtime hours, after he was terminated for cause. Phillips has not shown Pearson's Painting knew or showed reckless disregard for violating either the FLSA or NWPCA. *See, e.g., McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988); *Jarrett v. ERC Properties, Inc.,* 211 F.3d 1078, 1082 (8th Cir. 2000). Finally, the U.S. Department of Labor conducted a wage and hour audit, pursuant to plaintiff's complaint. Following the audit, the Labor Department only found $1,100.00 in wages due and owing company wide. That error rate is low. For these reasons, the Court will decline to award liquidated damages in this case.

THEREFORE, IT IS ORDERED THAT:

1. Plaintiff is awarded damages in the amount of $1,978.75.

2. A separate Judgment will be entered in accordance with this Memorandum and Order.

3. Plaintiff shall have 14 days from the date of this order to file a motion for attorney fees with appropriate supporting documentation and brief. Defendant shall have 14 days thereafter to file its brief and evidence, if any, in opposition.

Dated this 25th day of September, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge